IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA26-54

Filed 5 August 2026

Union County, No. 24CVS001245-890

DANIEL RAY UNDERWOOD,
ADMINISTRATOR OF THE ESTATE OF
JOAN ROMANS O'NEIL,
                  Plaintiff,

      v.

SHARON E. LYNCH,
                  Defendant.

Appeal by defendant from judgment entered 6 August 2025 by Judge Stephan R. Futrell in Union County Superior Court. Heard in the Court of Appeals 2 June 2026.

*Harry B. Crow, Jr., for plaintiff-appellee.*

*Patricia Lynch for defendant-appellant.*

ZACHARY, Judge.

Defendant Sharon E. Lynch appeals from a judgment entered upon a jury's verdict finding that Lynch engaged in constructive fraud by withdrawing $131,198.58 belonging to Joan Romans O'Neil ("Decedent") from accounts that Lynch and Decedent held jointly with right of survivorship. After careful review, we affirm.

## I.    **Background**

The evidence at trial tended to show the following:

Decedent and Lynch met at work in 2007. In 2014, Decedent purchased a two-

story home in Charlotte. As her mobility and health problems—including macular degeneration—worsened, Decedent moved to a one-story home in Charlotte. By 2017, Decedent could no longer drive. Lynch assisted Decedent with various household chores, but with the onset of the COVID-19 pandemic, Lynch's in-person visits with Decedent ended, and they lost contact.

In 2021, Decedent moved to Arizona, where she resided with her sister, Juanita Spitzock, until she purchased her own home. Lynch reconnected with Decedent, who visited Lynch in North Carolina in May 2022. Decedent later sold her Arizona residence, and on 13 September 2023, Decedent returned to North Carolina—at age 91—and moved in with Lynch, who agreed to rent her a room and provide care to her.

Two days after she moved in with Lynch, Decedent named Lynch joint owner of a checking account and a savings account that Decedent funded at Carolinas Telco Federal Credit Union and made the accounts joint with right of survivorship. Lynch signed the signature card as an account owner but made no contributions to the accounts. The teller at the credit union recalled that when Decedent established the joint accounts, she told the teller that "she needed somebody to just help her overall, take care of her, anything." The teller further testified that Decedent "couldn't see and she couldn't walk. She walked in with a walker."

On 27 September 2023, 14 days after moving in with Lynch, Decedent suffered a stroke. Lynch stayed with Decedent in the hospital for two days until hospital staff asked her to leave at the request of Decedent's son. That same day, Lynch withdrew

$119,089.25 from the parties' joint checking account and $11,909.33 from their joint savings account. Decedent died on 10 October 2023. Upon Decedent's death, Lynch withdrew the remaining funds from both accounts.

On 16 April 2024, Decedent's son, acting in his capacity as administrator of Decedent's estate, filed a complaint against Lynch in Union County Superior Court, alleging that Decedent relied upon Lynch's assurances that she "would provide assistance to . . . [D]ecedent [by] attending to the [wellbeing] of [D]ecedent until the death of [D]ecedent," and that these assurances "established a fiduciary relationship" between Lynch and Decedent. The complaint further alleged that Lynch used the funds she withdrew from the joint accounts "to her exclusive benefit and not in any way to the benefit" of Decedent, that Lynch had "failed and refused" to return the withdrawn funds, and that Lynch's actions "were fraudulent."

Lynch filed her answer and defenses on 27 June 2024. She generally denied the allegations of the complaint and further stated that as joint owner of the funds, she had no "legal obligation to remit such funds to" the Estate.

The matter came on for jury trial on 28 July 2025. Lynch moved for directed verdict at the close of the Estate's evidence and renewed the motion at the close of her own evidence; the trial court denied both motions. On 31 July 2025, the jury returned its verdict finding Lynch liable for constructive fraud. Lynch then moved for judgment notwithstanding the verdict, which the court denied. The trial court entered judgment consistent with the jury's verdict.

Lynch timely appealed the trial court's judgment.

## II. Discussion

Lynch raises two issues on appeal: whether the trial court erred by denying Lynch's motion for directed verdict and motion for judgment notwithstanding the verdict because 1) "North Carolina law does not recognize a claim by an estate for constructive fraud based on a pre-death withdrawal of funds by [Lynch] from a joint account held by . . . Decedent and [Lynch] with right of survivorship"; and 2) "the evidence did not establish the elements of a claim for constructive fraud." We address each argument in turn.

### A. Standard of Review

The standards of review of "the denial of a motion for directed verdict and of the denial of a motion for judgment notwithstanding the verdict are identical": "whether upon examination of all the evidence in the light most favorable to the non-moving party, . . . the evidence is sufficient to be submitted to the jury." *Denson v. Richmond County*, 159 N.C. App. 408, 411, 583 S.E.2d 318, 320 (2003) (extraneity removed).

"The party moving for judgment notwithstanding the verdict, like the party seeking a directed verdict, bears a heavy burden under North Carolina law." *S. Shores Realty Servs., Inc. v. Miller*, 251 N.C. App. 571, 578, 796 S.E.2d 340, 348 (citation omitted), *disc. review denied*, 369 N.C. 563, 798 S.E.2d 753 (2017). The non-moving party is to be provided "the benefit of every reasonable inference," and "all

conflicts of any evidence" are to be resolved "in favor of the non-movant." *Denson,* 159 N.C. App. at 411, 583 S.E.2d at 320 (citation omitted). "A motion for either a directed verdict or [judgment notwithstanding the verdict] should be denied if there is more than a scintilla of evidence supporting each element of the non-movant's claim." *Hewitt v. Hewitt*, 252 N.C. App. 437, 442, 798 S.E.2d 796, 799 (2017) (citation omitted).

This Court applies "de novo review to both a trial court's denial of a motion for [a] directed verdict and denial of a motion for judgment notwithstanding the verdict." *Denson*, 159 N.C. App. at 411, 583 S.E.2d at 320 (italics omitted). "Under a de novo review, we consider the matter anew and freely substitute our judgment for that of the trial court." *Ponder v. Been*, 299 N.C. App. 691, 697, 919 S.E.2d 527, 533 (2025) (extraneity removed).

## B. Authority of Personal Representative

Lynch first argues that the trial court erred in denying her motion for directed verdict and motion for judgment notwithstanding the verdict because a personal representative has no authority to recover, under a theory of constructive fraud, funds withdrawn prior to the funder's death by a joint owner from accounts held jointly with right of survivorship. In short, Lynch maintains that pursuant to N.C. Gen. Stat. § 41-2.1, upon Decedent's death, the joint accounts passed to Lynch, rather than the Estate; as such, the Estate cannot recover the funds that she withdrew prior to Decedent's death, absent a showing of need to make assets to pay the Estate's debts.

We disagree.

To begin, Lynch and Decedent established the joint accounts in question pursuant to N.C. Gen. Stat. § 54-109.58 (2025), which governs joint accounts with right of survivorship at credit unions. This section provides, in pertinent part, that "[f]unds in a joint account established with right of survivorship shall belong to the surviving joint tenant or tenants upon the death of a joint tenant, and the funds shall be subject only to the personal representative's right of collection as set forth in [N.C. Gen. Stat. §] 28A-15-10(a)(3)" to make assets to pay debts of the estate. *Id.* § 54-109-58(c).[1]

It is undisputed that Decedent funded the joint accounts and that the funds which the personal representative seeks to recover were withdrawn by Lynch prior to Decedent's death. Additionally, on appeal, Lynch does not argue that she owned the funds, stating that "the instant case does not involve the issue of ownership." Thus, the question presented is whether the personal representative for the estate of a now-deceased owner of accounts held jointly with right of survivorship may seek to recover funds withdrawn by the surviving joint tenant prior to the death of the joint tenant who owned those funds.

---

[1] This type of credit-union account may be held pursuant to the terms of the joint tenants' contract, or held pursuant to N.C. Gen. Stat. § 41-2.1 if "the contract . . . set[s] forth th[e] fact" that the account is held according to that subsection. N.C. Gen. Stat. § 54-109.58(a). Here, the contract contained no provision regarding § 41-2.1, and thus the joint accounts are solely governed by the parties' contract.

"[A] personal representative has the power to perform in a reasonable and prudent manner every act which a reasonable and prudent person would perform incident to the collection . . . of a decedent's estate." *Id.* § 28A-13-3(a). These powers include, *inter alia*, the power "[t]o maintain any appropriate action or proceeding to recover possession of any property of the decedent." *Id.* § 28A-13-3(a)(24).

In the instant case, Decedent owned the funds in the joint accounts during her lifetime, and the funds that Lynch withdrew prior to Decedent's death never passed to Lynch as a surviving joint tenant. As these funds remained Decedent's property, the personal representative of the Estate was thus statutorily authorized "[t]o maintain any appropriate action" to recover the funds from Lynch, including a claim for constructive fraud arising from Lynch's conduct prior to Decedent's death. *Id.* Accordingly, the trial court did not err in denying Lynch's motion for directed verdict and motion for judgment notwithstanding the verdict on this ground.

## C. Constructive Fraud

Lynch next argues that the trial court erred in denying her motion for directed verdict and motion for judgment notwithstanding the verdict because "there was not a scintilla of evidence to support" a claim for constructive fraud. We disagree.

"A constructive fraud claim requires a plaintiff to allege and show (1) that the defendant owes the plaintiff a fiduciary duty; (2) that the defendant breached that duty; and (3) that the defendant sought to benefit himself in the transaction." *Ironman Med. Props., LLC v. Chodri*, 268 N.C. App. 502, 513, 836 S.E.2d 682, 691

(2019) (extraneity removed). "A claim of constructive fraud does not require the same rigorous adherence to elements as actual fraud. Constructive fraud differs from actual fraud in that it is based on a confidential relationship rather than a specific misrepresentation." *Hunter v. Guardian Life Ins. Co. of Am.*, 162 N.C. App. 477, 482, 593 S.E.2d 595, 599 (extraneity removed), *disc. review denied*, 358 N.C. 543, 599 S.E.2d 48 (2004).

Lynch contends that there is no evidence of a confidential or fiduciary relationship between Lynch and Decedent. While "difficult to define in precise terms, a fiduciary relationship is generally described as arising when there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence." *Head v. Gould Killian CPA Grp., P.A.*, 371 N.C. 2, 9, 812 S.E.2d 831, 837 (2018) (extraneity removed). "Specifically, a fiduciary relationship arises whenever there is confidence reposed on one side, and resulting domination and influence on the other." *Id.* at 10, 812 S.E.2d at 837 (extraneity removed).

Mindful of the applicable standard of review, we conclude that in the case at bar the trial court did not err in denying Lynch's motions because the Estate presented ample evidence that Lynch and Decedent had a confidential or fiduciary relationship. Ms. Spitzock testified that her assessment of Decedent in April 2022, the month before Decedent's trip to North Carolina, was that Decedent was "cognitively impaired." Additionally, Decedent's health was poor and further

declining. Since at least 2002, Decedent suffered from two blood conditions, diverticulitis, and macular degeneration. She stopped driving in 2017 and was legally blind at the time of her death. Ms. Spitzock testified that Decedent also developed "asthma or breathing problems" following her visit to North Carolina. Her medical history also included diagnoses of cirrhosis of the liver, COPD, type 2 diabetes, and hypothyroidism.

Decedent clearly relied on Lynch. She and Lynch had conversations "at least . . . every day," "sometimes two times, sometimes three times"; Lynch testified that she was Decedent's "best friend/caregiver." When Decedent returned to North Carolina, Lynch's partner picked her up at the airport and drove Decedent and Lynch to Lynch's home, where Decedent rented a room and received care from Lynch. Two days after Decedent moved in, Decedent and Lynch set up the joint accounts. The teller at the Tesco Carolinas branch who assisted them testified that Decedent told her that she "needed somebody to just help her overall, take care of her, anything. She couldn't see and she couldn't walk. She walked in with a walker." Decedent was mentally and physically vulnerable, and there was "confidence reposed on one side, and resulting domination and influence on the other," resulting in a confidential or fiduciary relationship. *Id.* (extraneity removed).

Finally, although Lynch makes a passing reference to the last element of constructive fraud—whether Lynch "sought to benefit h[er]self in the transaction," *Ironman*, 268 N.C. App. at 513, 836 S.E.2d at 691 (citation omitted)—she does not

argue this issue in the body of her principal appellate brief; therefore, this issue is deemed abandoned. N.C.R. App. P. 28(b)(6). Nonetheless, we consider Lynch's removal of $131,198.58 from the joint accounts—of which a de minimis amount was expended to benefit Decedent, according to Lynch's testimony—as sufficient evidence to satisfy this element.[2]

We conclude that there existed sufficient evidence from which the jury could find that Lynch engaged in constructive fraud. Accordingly, the case was properly submitted to the jury.

### III.    Conclusion

For the foregoing reasons, the trial court did not err in denying Lynch's motions for directed verdict and judgment notwithstanding the verdict. Accordingly, we affirm the court's judgment.

AFFIRMED.

Chief Judge DILLON and Judge HAMPSON concur.

---

[2] Lynch testified that she used a portion of the money to purchase a blanket and Chapstick for Decedent, pen and paper to track Decedent's hospital stay, and a Christmas gnome for Decedent's hospital room. Lynch did not testify as to the cost of these items.